Diane L. Wendlandt (9011121)
Assistant Attorney General
Office of Criminal Appeals
310 K Street, Suite 702
Anchorage, AK 99501
Telephone: (907) 269-6260
Email: diane.wendlandt@alaska.gov

Attorney for Respondent

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT HAWES,<br><br>          Petitioner,<br><br>   vs.<br><br>SUPERINTENDENT ANGOL,<br><br>         Respondent. | Case No. 3:24-CV-00124-SLG-KFR<br><br>ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 |

State prisoner Robert Hawes seeks federal pretrial habeas relief under 28 U.S.C. § 2241, based on an alleged speedy-trial violation, defects in the state indictment and pre-indictment proceedings, and bail conditions that he believes are excessive. His claims must be denied because, despite the availability of state remedies, Hawes has failed to properly present his claims to the state courts, and even now, he is not barred from filing those claims in the state courts. Hawes' failure to exhaust his state remedies bars the present action under the common-law exhaustion doctrine and the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 746 (1971). Hawes fails to allege any facts that would allow him to avoid the requirements of exhaustion or abstention.

Moreover, there is no substantive merit to any of Hawes' claims. Hawes' bail claim fails because the state court considered all of the evidence presented and set bail at an amount that was appropriate to address the flight risk and the risk Hawes poses to his victim and the community. Likewise, Hawes' speedy-trial claim fails because most of the delay in the state proceeding was caused by continuances requested by the defense and, to a lesser degree, by the COVID-19 pandemic and a flood at the Palmer courthouse. Defense-requested delays do not count against the state in the speedy-trial analysis, and the pandemic and flood are valid grounds for delay that do not violate Hawes' speedy-trial right. Finally, Hawes' *pro se* claims challenging his indictment and alleging defects in the pre-indictment procedures do not allege federal constitutional violations and, to the extent he claims he was entitled to a pre-indictment hearing and finding of probable cause, that claim is moot in light of the indictment returned by the grand jury.

For these reasons, this court should deny Hawes' petition.

## Factual Background

*The state criminal case (Alaska Case No. 3PA-21-01098CR)*

On June 4, 2021, four-year-old K.G. reported that, when she was playing at a neighbor's house earlier that day, her friend's father, Robert Hawes, pulled her pants down, licked her genitals, and penetrated her vagina with his finger and penis.[1] *See* Complaints and Affidavit, attached as Exhibit 1, at 4-5. Hawes was arrested the next day, and one day

---

[1] DNA testing has since corroborated K.G.'s report. DNA matching Hawes' DNA was found on K.G.'s underwear.

later, on June 6, the state charged Hawes with three counts of first-degree sexual abuse of a minor based on K.G.'s report. *See* Exhibit 1, at 1-3; CourtView Summary, attached as Exhibit 2, at 4 (Docket, 6/6/21). Hawes was arraigned that same day; counsel was appointed, bail was set at a $75,000 cash appearance bond and a $100,000 cash performance bond, and a preliminary hearing was scheduled for June 16. *See* Exhibit 2, at 2 (Events, 6/6/21), 4-5 (Docket, 6/6/21); Log Notes, attached as Exhibit 3, at 42.

On June 11, a grand jury indicted Hawes on two counts of first-degree sexual abuse of a minor (an unclassified felony), one count of attempted first-degree sexual abuse of a minor (a class A felony), and one count of second-degree sexual abuse of a minor (a class B felony). *See* Indictment, attached as Exhibit 4. (The preliminary hearing was cancelled due to this superseding indictment.) The indictment was filed with the Palmer Superior Court on June 14, and Hawes was arraigned two days later; bail remained as previously set. *See* Exhibit 2, at 2 (Events, 6/16/21); Exhibit 3, at 40. At the arraignment, the trial court scheduled Hawes' trial for the week of September 27, 2021. *See* Felony Pretrial Order, attached as Exhibit 5.

But the COVID-19 pandemic intervened. When Hawes was charged in June 2021, jury trials had been restricted since mid-2020, and, on April 6, 2021, the Chief Justice of the Alaska Supreme Court ordered that jury trials for unclassified and class A felonies would remain suspended until at least July 6, 2021. *See* Special Order of the Chief Justice No. 8259 (April 6, 2021). On June 21, 2021, however, the Chief Justice confirmed that jury trials for unclassified and class A felonies would resume on July 6, 2021. *See* Special Order of the Chief Justice No. 8289 (June 21, 2021). Thus, by July 2021, the court system was

3

starting to reopen. *See* Supreme Court Order No. 1974 (July 21, 2021). But presiding judges retained the authority to re-suspend jury trials "when the COVID-19 average daily case rate over 14 days as reported by the Alaska Department of Health and Social Services rises above 20-30 cases per 100,000 population or the local risk level is otherwise seriously elevated." *Id.* at 4.

This reopening did not last long. COVID case counts began to rise in the mid to late summer of 2021. *See* CDC COVID-19 Charts for January 11, 2020, through December 2, 2023, showing for the State of Alaska (1) the number of new hospitalizations by week, (2) the number of currently hospitalized patients with confirmed COVID-19 by week, and (3) the number of provisional COVID-19 deaths by week, attached as Exhibit 6. In June 2021, the new Delta variant set off a new wave of infections. *See* CDC Museum COVID-19 Timeline, available at https://www.cdc.gov/museum/timeline/ covid19.html (June 1, 2021). By August 2021, the CDC was reporting a "growing surge of the Delta variant." *Id.* (August 3, 2021).

Alaska was not immune to the Delta surge. Hospitalizations in Alaska began to rise dramatically in July and August 2021. *See* Exhibit 6, at 1-2. By the fall of 2021, the number of hospitalizations reported per week exceeded any prior period. *Id.* And the numbers continued to rise sharply. By October and November 2021, the number of hospitalizations had reached unprecedented levels, and Alaska's health care system was at its breaking point. *Id.* The number of deaths from COVID-19 surged as well. *Id.* at 3.

The CDC data were corroborated by reports from the frontlines of the pandemic in Alaska. On September 21, 2021, the Anchorage Daily News reported that Alaska was

"now recording the highest case rate per capita of any U.S. state after surpassing its winter-level peak for COVID-19 cases and hospitalizations." Annie Berman, *Alaska's COVID-19 Case Rate is Now the Highest in the Nation as State Reports 6 Deaths*, Anchorage Daily News, Sept. 21, 2021, https://www.adn.com/alaska-news/2021/09/21/alaskas-covid-19-case-rate-is-now-the-highest-in-the-nation-as-state-reports-6-deaths/. Noting that many hospitals in Alaska were "in crisis," the article stated that

> Alaska's hospitals continue to operate under what were once unimaginable circumstances. Last week, the state's largest hospital, Providence Alaska Medical Center in Anchorage, announced it was shifting to crisis standards of care and rationing treatment due to a combination of staffing shortages and COVID-19 cases that accounted for about a third of the hospital's patients.

*Id.* According to the article, "hospitals in Anchorage and elsewhere are delaying non-urgent surgeries and restricting visitors. Rural hospitals are struggling to transfer patients for higher-level care." *Id.*

By late September, Alaska had the highest COVID rate in the nation. *See* Lex Treinen, *As COVID Cases Surge in Alaska, the State is Forced to Ration Other Care*, National Public Radio (Sept. 28, 2021), https://www.npr.org/2021/09/28/1041082854/as-covid-cases-surge-in-alaska-the-state-is-forced-to-ration-other-care/. "Because medical personnel are stretched thin the state has activated crisis standards of care due to the surge of hospitalizations." *Id.* The crisis finally began to ease in November 2021, and by February 2022, the worst of the Delta surge appeared to be over. *See* Exhibit 6.

Addressing this surge in the pandemic, on August 4, 2021, the presiding judge of the Third Judicial District noted that the average daily rate of COVID-19 cases was

17.70 per 100,000 population in Matanuska-Susitna region and that the rate was much higher in nearby Anchorage. *See* Third Judicial District Presiding Judge Order # 894 (Aug. 4, 2021). Concerned that the surge in Anchorage would quickly overtake Palmer as well, the presiding judge ordered that jury trials would be suspended in Palmer until August 27, 2021. *Id.* Several weeks later, the presiding judge noted that the average daily rate of COVID-19 cases exceeded 30 per 100,000 persons in all court locations in the district. *See* Third Judicial District Presiding Judge Order # 899 (Aug. 23, 2021). The judge therefore suspended jury trials across the district until September 24. *Id.* And on September 16, the average daily rate in all court locations in the district exceeded 80 per 100,000 persons, leading the presiding judge to suspend trials until October 29. *See* Third Judicial District Presiding Judge Order # 901 (Sept. 16, 2021). The suspension was renewed twice more, resulting in a suspension that lasted until January 10, 2022. *See* Third Judicial District Presiding Judge Order # 901 First Update (Oct. 12, 2021); Third Judicial District Presiding Judge Order # 901 Second Update (Nov. 23, 2021).

On December 2, 2021, the chief justice of the Alaska Supreme Court issued new guidance stating that, "[b]eginning January 10, 2022, there will be no further suspensions of criminal jury trials absent extraordinary circumstances." Special Order of the Chief Justice Order No. 8352 (Dec. 2, 2021), at 2. The chief justice reasoned:

> After months of extremely high COVID-19 case counts, Alaska communities are for the most part seeing declining numbers and downward trends and local hospitals have increased capacity. And much has been learned about mitigating COVID-19 transmission by using social distancing and masking. Effective vaccines are widely available, treatments exist for those who contract COVID-19, and making rapid testing available to trial participants now is possible. Most courthouses

6

> now use MERV-13 air filters providing higher level air filtration, including for viruses. The court system has thought carefully about how to safely conduct jury trials and has successfully done so on several occasions.

*Id.* at 1. Thus, "[c]riminal jury trials will proceed unless a trial court is unable to socially distance all participants, enforce masking, or provide a sufficient number of jurors because of local COVID-19 outbreaks reflected by school closures, hospital alerts, stay-at-home ordinances, or travel restrictions." *Id.* at 2.

Given these COVID-related suspensions, at a July 29, 2021, status conference, Hawes' trial was rescheduled for the week of January 10, 2022. *See* Exhibit 3, at 39.[2] Thereafter, on October 25, 2021, Hawes, through counsel, requested a bail review hearing, asking that the bail be reduced to $3,000 with supervision by the Department of Corrections Pretrial Enforcement Division (PED). *See* Application for First Bail Review Hearing, attached as Exhibit 8. The trial court granted the request, and the hearing was held on October 27, with Hawes present and represented by counsel. *See* Exhibit 3, at 37-38. After hearing from the attorneys, as well as from K.G.'s father and grandfather, Superior Court Judge Thomas Jamgochian denied the request, finding that Hawes was a flight risk and that he had failed to present adequate financial information or propose a third party custodian. *Id.* Hawes did not appeal that order, even though Alaska law provides an expedited bail appeal process. *See* AS 12.30.030; Alaska R. App. P. 206(b); Alaska R. App. P. 207.

---

[2] Respondent has obtained audio recordings of a bail hearing and 10 status hearings held by the state trial court from March 30, 2022, and April 19, 2023. Those recordings are attached as Exhibit 7 and will be cited, as appropriate. Respondent is still attempting to obtain recordings of the remaining hearings from the Palmer Superior Court and will lodge them when, or if, they are received.

On December 9, 2021, Hawes, through counsel, requested a second bail review hearing, stating that he was providing the additional financial information noted by the judge at the prior bail review hearing; a bail review hearing was scheduled for January 4, 2022. *See* Application for Second or Subsequent Bail Review Hearing, attached as Exhibit 9. In the meantime, at a pretrial conference held on December 10, 2021, Hawes's attorney requested a continuance of the trial, which was currently scheduled for January 10, 2022; the request was granted and trial was postponed until the week of March 29, 2022. *See* Exhibit 3, at 36. Later, at the bail review hearing on January 4, 2022, the trial court again denied Hawes' request to reduce the bail, noting that the information provided by Hawes was incomplete. *See* Exhibit 3, at 35. Again, Hawes did not appeal.

Just as jury trials were recommencing in January 2022, the Palmer courthouse flooded "as a result of the recent extraordinary weather event in the Matanuska-Susitna Borough," and jury trials were suspended for lack of an appropriate venue in which to conduct felony jury trials. *See* Third Judicial District Presiding Judge Order # 918 (Jan. 4, 2022). The flood-related suspension was extended on February 14, 2022, to continue until further notice. *See* Third Judicial District Presiding Judge Order # 918 Updated (Feb. 14, 2022). At the next pretrial conference on February 25, 2022, Hawes' trial was continued and reset for the week of May 23, 2022.[3] *See* Exhibit 3, at 34.

Hawes, through counsel, filed a third and fourth request for a bail review hearing

---

[3]   On March 14, 2022, the presiding judge ordered that some Palmer jury trials could go forward but would be held in the Anchorage courthouse, as space was available. *See* Third Judicial District Presiding Judge Order # 923 (Mar. 14, 2022).

on March 10 and March 15, 2022. *See* Applications for Second or Subsequent Bail Review Hearing, attached as Exhibit 10. A bail review hearing was held on March 30, 2022, in response to these requests. *See* Exhibit 3, at 30-33; Exhibit 7 (3/30/22). This time, Hawes proposed a man named Earl Love as his third-party custodian. *Id.* Mr. Love was a friend of Hawes, but he was significantly disabled, was unable to drive, and lived in Rhode Island. *Id.* He stated that he would move to Alaska in order to act as Hawes' third-party custodian, but had not yet made any firm arrangements to do so. *Id.* Due to significant concerns about having Mr. Love act as Hawes' proposed third-party custodian, the trial court again denied Hawes' request to modify the bail. *See* Exhibit 3, at 33; Exhibit 7 (3/30/22). Again, Hawes did not appeal that ruling through the state's expedited bail review process.

Over the next two years, from April 2022 through April 2024, Hawes' attorney requested multiple trial continuances. *See* Exhibit 3, at 10-29; Exhibit 7 (4/15/22, 6/10/22, 7/15/22, 8/11/22, 9/23/22, 10/21/22, 12/2/22, 1/4/23, 2/8/23, 4/19/23).[4] At a status hearing on December 2, 2022, Hawes personally expressed his unwillingness to waive his speedy-trial rights, but in response to the judge's inquiry, he conceded that he was not ready for trial. *See* Exhibit 3, at 23; Exhibit 7 (12/2/22). During this same period, on June 5, 2023, Hawes requested another bail review hearing; that request was summarily denied because he failed to propose a third-party custodian as discussed at the prior bail review hearing.

---

[4] As noted earlier, respondent has so far obtained recordings of only 10 of the status hearings at which continuances were granted. *See* Exhibit 7. All of those recordings reflect that Hawes' attorney requested continuances at those hearings. Based on the log notes (Exhibit 3), respondent has no reason to believe that the other status hearings were any different, and Hawes has not alleged any state-requested delay during this period.

9

*See* Application for Second or Subsequent Bail Review Hearing, attached as Exhibit 11. Eventually, at a status conference on April 4, 2024, Hawes' attorney requested a lengthy trial continuance, and the trial was reset for the week of November 18, 2024. *See* Exhibit 3, at 10. But at a status conference on June 20, 2024, Hawes personally expressed dissatisfaction with the trial delay, and the trial was moved up from November 18, 2024, to September 9, 2024. *See* Exhibit 3, at 8. A representation hearing was apparently held later that same day. *See* Exhibit 2, at 7 (Events, 6/20/24). The state does not have access to the log notes or audio of that hearing, but the record reflects that Hawes was still represented by the same counsel after that hearing.

On August 21, 2024, the trial was moved back to the week of November 18, 2024. *See* Exhibit 3, at 7. Shortly thereafter, Hawes began filing *pro se* pleadings with the trial court. *See* (Common Law) Order for Rule 5/45 & CR 325 waiver violation, attached as Exhibit 12 (requesting dismissal of the state court proceeding based on an alleged speedy-trial violation); Motion to Dismiss Indictment, attached as Exhibit 13 (requesting dismissal of the case based on an alleged speedy-trial violation). The trial court rejected these pleadings because Hawes was represented by counsel and thus could file pleadings only through his attorney. *See* Exhibit 2, at 7 (Docket, 8/26/24). A month later, on September 24, Hawes filed a *pro se* motion for a representation hearing. *See* Request and Order for Representation Hearing, attached as Exhibit 14. The trial court rejected this pleading on October 1, 2024, for the same reason—i.e., Hawes was allowed to file pleadings only through his attorney. *See* Exhibit 14.

At a status conference on November 6, 2024, at which Hawes was present in

person, Hawes' attorney noted that he was receiving mixed messages from Hawes as to whether he wanted to go to trial as currently scheduled. *See* Exhibit 3, at 4. The trial court gave Hawes additional time to discuss the question of trial timing with his attorney; when the parties went back on record, Hawes' attorney requested a continuance until the week of December 30, 2024. *Id*. at 4-5. The following month, at a status conference on December 4, 2024, the trial was rescheduled for the week of January 27, 2025, at the request of Hawes' attorney. *See* Exhibit 3, at 3. Five days later, Hawes, through counsel, requested a representation hearing; the request was granted and a representation hearing was held on December 16. *See* Request for Representation Hearing, attached as Exhibit 15; Order, attached as Exhibit 16; Exhibit 3, at 2. According to the log notes, the trial court ordered no change in representation. *See* Exhibit 3, at 2.

Most recently, at a pretrial conference on January 8, 2025, Hawes' counsel requested another trial continuance, and the trial was rescheduled for April 7, 2025. *See* Exhibit 3, at 1. The state is prepared to proceed to trial as currently scheduled.

*The federal habeas action (Case No. 3:24-cv-00124-SLG-KFR)*

On June 7, 2024, Hawes filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241. *See Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241* (Doc. 1). In his petition, Hawes asked this court to dismiss with prejudice the state criminal charges against him. *Id.* at 8. In support, he alleged that the state had (1) imposed excessive bail during hearings at which he was not present (Ground One), (2) violated state rules requiring a preliminary examination (Ground Two); (3) was prosecuting him under a defective indictment (Ground Three), and (4) violated his speedy-trial rights by failing to

11

bring him to trial within the period required by the federal Speedy Trial Act, Alaska Criminal Rule 45, and the federal and state constitutions (Ground Four). *Id.* at 6-8.

At Hawes' request, this court appointed counsel to represent him. *See Motion for Appointment of Counsel* (Doc. 5); *Order Granting Motion to Appoint Counsel* (Doc. 8); *Notice of Appearance* (Doc. 9). Counsel filed an amended petition, incorporating Hawes' prior *pro se* claims and supplementing the claims previously set forth as Grounds One (excessive bail) and Four (speedy-trial). *See Amended and Supplemental Grounds for Relief Under 28 USC § 2241* (Doc. 10). The amended application asks this court to dismiss the state charges or, in the alternative, to order Hawes' immediate release from custody based on the alleged violation of the Eighth Amendment's prohibition against excessive bail. *Id.* at 17. This court ordered respondent Superintendent Angol to respond to that pleading. *See Order re Section 2241 Proceeding* (Doc. 4), at 3.

### Respondent's Answer to Petition

In June 2021, the State of Alaska charged Hawes with sexually abusing a four-year-old child. Since then, his trial has been delayed for three-and-a-half years due to defense-requested continuances and the temporary suspension of jury trials due to COVID-19 and a flooded courthouse. Hawes alleges that the state's actions in this pending state case have violated his constitutional rights in a variety of ways. Although he has failed to properly raise any of these issues in the state courts and even though there are still avenues available to him in the state courts, Hawes asks this court to intervene and dismiss the state case with prejudice or, in the alternative, to order his immediate release from custody.

12

Hawes' claims fail both procedurally and on their merits. First, to the extent Hawes seeks dismissal of the state-court case, his claims are barred by the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971). Second, Hawes has failed to exhaust state remedies as to any of his claims. Hawes' failure to exhaust his state remedies is not excused by the fact that his attorney has chosen not to raise the issues in state court. An attorney's tactical choices in state court do not open the door to this court's review of issues that could and should be litigated first in state court. To the extent Hawes seeks to challenge the effectiveness of counsel in this regard, he has likewise failed to exhaust his state remedies. Third, none of Hawes' claims have merit. There is no speedy-trial violation because most of the delay was at Hawes' request and the rest is attributable to COVID-19 and a natural disaster. These are valid reasons for trial delay. Likewise, the bail conditions set by the state court are reasonable and directly related to the state's interest in protecting the victim and the community. Finally, Hawes' challenge to the indictment and his complaints about the pre-indictment procedure are moot and non-cognizable in federal habeas. Therefore, this court should deny Hawes' petition for pretrial habeas relief.

## I. TO THE EXTENT HAWES SEEKS DISMISSAL OF THE STATE-COURT ACTION, *YOUNGER* ABSTENTION APPLIES TO HAWES' PRETRIAL HABEAS CLAIMS

Federal courts have adopted a long-standing and "fundamental policy against federal interference with state criminal proceedings." *Younger v. Harris*, 401 U.S. 37, 46 (1971). This policy is rooted in part in the basic concept of federalism: the "National Government will fare best if the States and their institutions are left free to perform their

separate functions in their separate ways." *Id.* at 44. The Supreme Court has recognized an exception to the abstention doctrine only where special circumstances warrant federal intervention. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). Special circumstances that might justify federal intervention exist where state officials engaged in "proven harassment," where the prosecution is "undertaken . . . in bad faith without hope of obtaining a valid conviction[,] and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Id.*

The general doctrine of abstention applies specifically to habeas actions. *In re Justices of the Superior Court Dep't of the Massachusetts Trial Court*, 218 F.3d 11, 17 (1st Cir. 2000). "With only two exceptions to date, the federal courts have routinely rejected petitions for pretrial habeas relief raising any variety of claims and issues." *Id.* at 17-18. One of those exceptions relates to claimed violations of the defendant's right to speedy trial, but only "when the requested relief is an immediate trial." *Id.* at 17-18 n.5 (citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973)). Absent special circumstances, when a defendant seeks dismissal or similar relief based on a speedy-trial violation, "his habeas action must await the conclusion of state proceedings." *Id.* (citing *Carden v. Montana*, 626 F.2d 82, 84-85 (9th Cir. 1980)). (The other exception is for double jeopardy claims. *Id.* at 17 n.5.)

Hawes does not seek an immediate trial; instead, he seeks an order dismissing the state prosecution as a remedy for a purported speedy-trial violation, as well as for alleged defects in the indictment and pre-indictment proceedings. *See* Petition (Doc. 1), at

14

8; Amended Petition (Doc. 10), at 17.[5] As noted, such relief is available "only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Carden*, 626 F.2d at 84 (quoting *Perez*, 401 U.S. at 85).

Hawes does not contend that the state has undertaken this prosecution for purposes of harassment or in bad faith. *See* Amended Petition (Doc. 10), at 9-17. Instead, he argues that, due to extraordinary circumstances, he has not had "an adequate opportunity to present his constitutional challenges in the superior court." *Id.* at 13-14. Specifically, he cites the following "special circumstances": (1) his attorney requested trial continuances without Hawes' consent and despite his express desire to proceed to trial; (2) Hawes was not allowed to attend the hearings at which those continuances were requested, thereby preventing him from voicing an objection to them; and (3) the state trial court refused to allow him to file *pro se* pleadings while represented by counsel, thus preventing him from filing written objections or motions to dismiss based on a speedy-trial violation. *See* Amended Petition (Doc. 10), at 14-16. But none of these circumstances, even if true, would be improper or sufficiently extraordinary to warrant an exception to abstention.

---

[5] Hawes does not appear to be requesting dismissal based on allegedly excessive bail. Instead, he asks only for immediate release from confinement. *See* Amended Petition (Doc. 10), at 16-17. That claim would arguably falls outside *Younger* abstention, but as discussed later, the excessive-bail claim is procedurally barred due to Hawes' failure to exhaust state remedies that were, and may still be, available to him.

15

**A.    Hawes' consent to his attorney's requests for continuance is not required under federal law**

First, there is no federal rule—constitutional or otherwise—that requires a court to obtain a defendant's consent to their attorney's request for a continuance. In fact, federal courts have adopted a contrary rule.

For example, in *United States v. Pair*, 84 F.4th 577, 586-87 (4th Cir. 2023), the Fourth Circuit rejected a defendant's claim that continuances requested by his attorney should not count against him under the federal Speedy Trial Act because the defendant explicitly objected to those requests. In concluding that the "plain text" of the federal law foreclosed this argument, the Fourth Circuit noted that "[c]onsent of the defendant is not listed among the several factors that a court should consider in granting an ends-of-justice continuance." *Id.* at 586. The court further stated:

> Other courts of appeals have reached this same conclusion. *See United States v. Gates*, 709 F.3d 58, 66 (1st Cir. 2013) ("[I]n the ordinary course and within the confines of the [Speedy Trial Act] exclusion provisions, defense counsel has the power to seek [a] continuance without first informing his client or obtaining his client's personal consent."); *United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013) ("[A] district court may grant a continuance sought by counsel without the consent of the defendant so long as the district court determines that the ends of justice would be served . . . and sets forth its findings on the record."); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("[The defendant's] opposition to his counsel's request for a continuance does not prevent that time from being excluded from the speedy trial calculation.").

*Pair*, 84 F.4th at 586-87. *See also United States v. Troy*, 564 F.Supp.2d 42, 47-48 (D. Me. 2008) ("To require a defendant's consent to request a continuance would have significant practical effects: 'The adversary process could not function effectively if every tactical decision required client approval.'") (quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988)).

16

Alaska law is consistent with federal law. The Alaska Court of Appeals recently noted that a defendant's express consent to their attorney's continuance request is not required under Alaska Criminal Rule 45—Alaska's speedy-trial rule:

> As we have previously recognized, "[W]hether to bring a motion for a continuance is primarily the responsibility of counsel." Thus, as a general matter, "the court may rely upon the request of counsel for a continuance, without seeking a separate waiver from the defendant" or engaging a represented defendant in a direct colloquy about their understanding of their speedy trial right or their consent.

*Alaska Pub. Def. Agency v. Superior Ct.*, 530 P.3d 604, 616 (Alaska App. 2023). Thus, under Alaska law, absent an affirmative objection by the defendant, a trial court may rely on a defense attorney's request for a continuance and need not seek a separate, personal consent from the defendant.[6] *See Henson v. State*, 576 P.2d 1352, 1356 n.9 (Alaska 1978); *Machado v. State*, 797 P.2d 677, 684-85 (Alaska App. 1990); *Yearty v. State*, 805 P.2d 987, 991 (Alaska App. 1991). This is true even when the defendant is not present at the time of the request or when the defendant's acquiescence in a continuance is manifested by the attorney's filing a statement of non-opposition. *See*, *e.g.*, *Snyder v. State*, 524 P.2d 661, 664 (Alaska 1974); *O'Dell v. Anchorage*, 573 P.2d 1381, 1384 (Alaska 1978); *Alaska Pub. Def. Agency*, 530 P.3d at 610.

---

[6]    In *Hernandez v. State*, 544 P.3d 40 (Alaska App. 2024), the Alaska Court of Appeals gave some weight to the claim that a represented party may independently object to their attorney's requests for continuance. *Id.* at 46-47. But the court did not reach the broader question of whether a defendant must consent, explicitly or otherwise, to their attorney's requests for continuances. Nor would that court's ruling be determinative of the issue in Hawes' case: whether, under federal law, a federal court should abstain from deciding a pretrial habeas petition alleging a speedy-trial violation where the defendant disagreed with his attorney's decision to request trial continuances in state court.

17

Hawes may argue that these cases do not apply to the question of *Younger* abstention because they relate to speedy-trial rights. But he has not cited a single case in which a court has required a defendant's affirmative consent to his attorney's continuance request. Absent such a requirement, the lack of affirmative consent to the continuance requests cannot qualify as an extraordinary circumstance supporting federal court intervention in this state-court proceeding.

### B. There is no federal right to be present at scheduling conferences or status hearings

Hawes also complains that he was not personally present at the hearings at which his attorney requested trial continuances; he asserts that his absence from those proceedings prevented him from objecting to his attorney's requests. *See* Amended Petition (Doc. 10), at 14. But there is no federal right—constitutional or otherwise—to be present at status hearings at which only scheduling is discussed.

The Supreme Court has recognized a defendant's right to be present under both the Confrontation Clause and the Due Process Clause. *See United States v. Gagnon*, 470 U.S. 522, 526-27 (1985). The Confrontation Clause protects a defendant's right to be present when the defendant's absence from a proceeding "interferes with [the defendant's] opportunity for effective cross-examination." *See Kentucky v. Stincer*, 482 U.S. 730, 740 (1987). Thus, the Confrontation Clause is not violated by a defendant's absence from a hearing where no evidence or witnesses were offered—as is usually the case at status hearings or scheduling conferences. *Id.* It does not appear that any evidence or witnesses were presented at the hearings from which Hawes was absent. *See* Exhibit 3; Exhibit 7.

18

Thus, Hawes' absence did not violate the Confrontation Clause.

In contrast, the Due Process Clause protects a defendant's right to be present at certain proceedings, regardless of whether evidence or witnesses are presented. *Gagnon*, 470 U.S. at 526 (recognizing "that this right [of presence] is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him"). In *Gagnon*, the Court held that a defendant has "a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Id.* at 526 (quoting *Snyder v. Massachusetts*, 291 U.S 97, 105-06 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)). In other words, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Stincer*, 482 U.S. at 745.

Consistent with *Snyder*, *Gagnon*, and *Stincer*, federal courts have held that defendants do not have a due process right to be present at status conferences where only administrative issues, such as scheduling or discovery, are discussed. *See*, *e.g.*, *United States v. Reyes*, 24 F.4th 1, 31 (1st Cir. 2022) (no due process violation when defendant was absent from "status conferences to discuss discovery and scheduling"); *McKethan v. Mantello*, 522 F.3d 234, 238 (2d Cir. 2008) ("a status conference—normally held among the court and counsel—is not typically a 'stage of the criminal proceeding that is critical to its outcome' such that the defendant has a constitutional right to attend") (quoting *Stincer*,

19

482 U.S. at 745); *United States v. Ushery*, 785 F.3d 210, 223 (6th Cir. 2015) (no due process violation when defendant was absent from teleconference that "appears to have been 'a brief, administrative conference' that did not have 'significant consequences' for Ushery") (quoting *Hereford v. Warren*, 536 F.3d 523, 529-30 (6th Cir. 2008)); *Small v. Endicott*, 998 F.2d 411, 415 (7th Cir. 1993) ("a defendant need not be present at a pretrial hearing where only preliminary matters of a procedural nature are at stake"); *Middleton v. Roper*, 455 F.3d 838, 851-53 (8th Cir. 2006) (defendant's absence from three pretrial hearings did not violate due process because the hearings related primarily to scheduling and other pretrial issues not requiring evidence or witnesses).

Hawes has not alleged that he was absent from any hearings that would be subject to the due process right to be present; all of the hearings from which he was absent were status hearings addressing scheduling and administrative matters. *See* Exhibit 2; Exhibit 3; Exhibit 7. When substantive matters were discussed (including bail hearings), Hawes was present. *See* Exhibit 3. Thus, his due process right to be present was not violated. For this reason, his absence from these hearings does not qualify as an extraordinary circumstance that would support an exception to *Younger* abstention.

Oddly, Hawes does not address the right to be present; instead, he discusses the constitutional right of access to the courts, as described in *Bounds v. Smith*, 430 U.S. 817 (1977), *Lewis v. Casey*, 518 U.S. 343 (1996), and *Cornett v. Donovan*, 51 F.3d 894 (9th Cir. 1995). *See* Amended Petition (Doc. 10), at 7-8. But that right does not apply here. Those cases address the type of assistance the state must offer prisoners who seek to file complaints or petitions to vindicate constitutional rights—i.e., a federal habeas petition or

20

a civil complaint asserting §1983 claims. *See*, *e.g.*, *Bounds*, 430 U.S. at 828 (prison officers must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law"); *Lewis*, 518 U.S. at 355 (*Bounds* requires only that prisoners be provided with the tools needed "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration"). In *Cornett*, the Ninth Circuit described the right of access as follows:

> The right of access is designed to ensure that a habeas petition or a civil rights complaint of a person in state custody will reach a court for consideration. Once the claim reaches a court, an indigent institutionalized person is in the same position as an indigent noninstitutionalized person filing, for example, a civil rights claim.

*Cornett*, 51 F.3d at 899.

In contrast, Hawes is arguing that his absence from status hearings prevented him from personally objecting to continuances requested by his attorney, thereby restricting his "access" to the courts. *See* Amended Petition (Doc. 10), at 14-15. But this argument ignores the obvious fact that, unlike the inmates in *Bounds*, *Lewis*, and *Cornett*, Hawes was entitled to, and in fact had, counsel who appeared on his behalf at all of the status hearings. The fact that Hawes may not have agreed with his attorney's decision to request continuances at those hearings does not violate his access to the courts. And, by extension, it does not constitute an extraordinary circumstance for purposes of avoiding *Younger* abstention.

Finally, it is worth noting that Hawes *was* present at some of the status hearings. At the December 22, 2022, hearing, Hawes stated that he was not waiving his speedy trial

rights, but he then conceded that he was not ready to go to trial. *See* Exhibit 3, at 23; Exhibit 7 (12/2/22). More recently, at a status hearing on November 6, 2024, Hawes' attorney noted that Hawes was giving mixed signals about whether he wanted to go to trial in December as scheduled. *See* Exhibit 3, at 4. After a break to allow Hawes to discuss the issue with his attorney, the attorney requested an additional trial continuance. *Id.* The log notes do not reflect any personal objection raised by Hawes in response. *Id.* Thus, one must question whether Hawes would in fact have objected to the continuance requests if he had been personally present at all of the status hearings.

### C. Hawes has no federal right to file *pro se* pleadings while he was represented by counsel

Hawes also complains that the state trial court refused to allow him to file *pro se* pleadings while he was represented by counsel. *See* Amended Petition (Doc. 10), at 14. But Hawes fails to identify any federal right to file *pro se* pleadings while one is represented by counsel. In fact, there is no federal constitutional right to co-counsel status:

> A criminal defendant does not have an absolute right to serve as co-counsel. *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir. 1981) (per curiam). Whether to allow hybrid representation, where the accused assumes some of the lawyer's functions, is within the sound discretion of the judge. *See United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir. 1982).

*United States v. Williams*, 791 F.2d 1383, 1389 (9th Cir. 1986). *See also McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Thus, the state court cannot be faulted for requiring that all pleadings come through Hawes' attorney, and Hawes has not cited any federal law reaching a contrary conclusion. This then is not an extraordinary circumstance supporting an exception to *Younger* abstention.

22

**D. The trial delay, by itself, does not create an exception to *Younger* abstention**

Finally, Hawes seems to argue that the trial delay itself justifies an exception to the abstention doctrine. *See* Amended Petition (Doc. 10), at 8-9. Hawes relies on the Ninth Circuit's rulings in several cases, including *Phillips v. Vasquez*, 56 F.3d 1030 (9th Cir. 1995), and *McNeely v. Blanas*, 336 F.3d 822 (9th Cir. 2003), to support this assertion. Amended Petition (Doc. 10), at 8-9. But these cases are easily distinguished.

In *Phillips*, the defendant (Phillips) was convicted in state court of murder, and his convictions were affirmed by the state courts on appeal. *Phillips*, 56 F.3d at 1032. His sentence, however, was reversed, he was resentenced, and his appeal of that sentence was still pending in state court, with no immediate resolution in sight due to problems with the trial transcripts. *Id.* at 1032. Phillips filed a federal habeas action attacking only his conviction, not his sentence. *Id.* The district court dismissed the action based in part on abstention, stating that Phillips must wait until his sentence appeal is complete before seeking federal habeas relief, and in part for failure to exhaust his state remedies—i.e., the sentence appeal. *Id.*

The Ninth Circuit disagreed. As the court noted, it was "undisputed that the guilt phase [including the appeal of the conviction] of this case is final." *Phillips*, 56 F.3d at 1033. The only thing pending in state court was the sentence appeal, which was not implicated in the federal habeas action and could proceed parallel to the federal action. *Id.* Given these facts, the court held that no purpose would be served by delaying Phillips' federal challenge of his conviction until he had completed his state sentence appeal. *Id.*

23

The Ninth Circuit then discussed the various jurisprudential concerns implicated in Phillips' case. For example, the court pointed to the extraordinary delay—nearly 15 years had passed since Phillips was convicted. *Phillips*, 56 F.3d at 1035. But more than the delay, the court noted that "there is no end in sight." *Id.* Thus, if the court refused to consider the petition, Phillips "might be forced to wait a further indeterminate period of time before he could raise any federal challenge to the constitutionality of his conviction." *Id.* Moreover, the comity concerns that fuel both the abstention doctrine and the exhaustion requirement were not present in Phillips' case. "Comity concerns in this case are practically nonexistent since the state has had a full and fair opportunity to review the validity of Phillips' conviction and its decision regarding that conviction is final." *Id.* at 1036. In short, the Ninth Circuit's decision to reject abstention in *Phillips* must be viewed in light of its unique facts. The court itself recognized that fact, stating:

> Our decision in this case is a narrow one. We simply hold that Phillips should not be required to wait more than fifteen years for his sentence to be finally resolved before he may challenge the constitutionality of his conviction.

*Phillips*, 56 F.3d at 1037. *See*, *e.g.*, *Edelbacher v. Calderon*, 160 F.3d 582, 585-87 (9th Cir. 1998) (discussing narrowness of *Phillips* decision).

No such circumstances exist here. First, as will be discussed later, Hawes has not fully exhausted his state court remedies as to the claims he seeks to raise in this case. Second, there is no indefinite future delay here. Trial is set to begin on April 7, 2025, and will start on that date unless Hawes requests another continuance. Upon conviction, he can raise his claims on appeal, and he can file a state post-conviction relief action alleging

24

ineffective assistance in his attorney's handling of these claims. There is no reason to believe that litigation of these claims in state court will take an inordinate amount of time. In short, *Phillips*' narrow ruling does not apply here.

Hawes also cites *McNeely v. Blanas*, 336 F.3d 822 (9th Cir. 2003). *See* Amended Petition (Doc. 10), at 8 n.24, 15 n.43. But there are significant differences between Hawes' case and *McNeely*—differences that call for a different result. Most important, in *Brown v. Ahern*, 676 F.3d 899 (9th Cir. 2012), the Ninth Circuit clarified that *McNeely* "simply confirms that a state may 'effectively waiv[e]' an abstention defense by 'voluntarily submit[ting] to federal jurisdiction even though it might have had a tenable claim for abstention.'" *Id.* at 903 (quoting *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 394 (9th Cir. 1995)). The state is not waiving its abstention defense in Hawes' case.

Second, in *McNeely*, the state not only failed to bring the defendant to trial but also failed to hold a preliminary hearing at which probable cause could be established. *McNeely*, 336 F.3d at 824-25. In contrast, Hawes was indicted by a grand jury, thus establishing probable cause to proceed. *See* Exhibit 4. In *Wright v. Alaska*, this Court distinguished *McNeely* by noting, among other things, that "McNeely had never even received a probable cause determination at a preliminary hearing during the five-year delay, unlike Wright, whose charges were reviewed for probable cause when he was indicted by a grand jury after his arrest." No. 3:07-cv-00244-JWS-DMS, 2008 WL 11424264 at *7 (D. Alaska Aug. 4, 2008) (unpublished), *aff'd*, *Wright v. Volland*, 331 Fed. Appx. 496 (9th Cir. 2009). The same distinction applies here.

25

### E. Hawes' challenges to the pretrial proceedings are not exempt from *Younger* abstention

Hawes argues that *Younger* does not apply to claims of unconstitutional pretrial detention. Citing *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018), and several related cases, he claims that challenges to unlawful pretrial detention—i.e., his claims that he is being held without a preliminary hearing and is being subjected to excessive bail—cannot be vindicated on direct appeal and therefore may be pursued pretrial. *See* Amended Petition (Doc. 10), at 2-3, 13, 16-17. Respondent agrees that the excessive-bail claim may be exempt from *Younger* abstention (but not, as discussed later, from the exhaustion requirement) to the extent Hawes seeks only immediate release and not dismissal of the state prosecution. *See Arevalo*, 882 F.3d at 765-67 (refusing to apply *Younger* abstention "because the issues raised in the bail appeal are distinct from the underlying criminal prosecution and would not interfere with it").

But Hawes' challenge to his indictment and lack of a preliminary examination do not fall within *Arevalo*'s reasoning. Instead, this court must look to the reasoning in *Page v. King*, 932 F.3d 898 (9th Cir. 2019). In *Page*, the Ninth Circuit refused to apply *Younger* abstention to a state prisoner's challenge to a state court's reliance on an old and admittedly out-of-date probable cause finding. In 2004, California sought to commit Page as a sexually violent predator (SVP) based on his long criminal history. *Page*, 932 F.3d at 900. Litigation continued over the course of the next 13 years; although a finding of probable cause was made at the start of the proceeding, that finding was of questionable value years later because it was based on scientific research that had since been discredited.

26

*Id.* at 900-01. The Ninth Circuit held that the 13-year delay was not by itself grounds for avoiding the *Younger* abstention doctrine. *Id.* at 902-03. But the court held that *Younger* abstention was not appropriate

> where (1) the procedure challenged in the petition is distinct from the underlying criminal prosecution and the challenge would not interfere with the prosecution, or (2) full vindication of the petitioner's pretrial rights requires intervention before trial.

*Id.* at 903. Page's claim that the probable cause finding was based on outdated science fell within this exception. The court explained: "If Page is right, then regardless of the outcome at trial, a post-trial adjudication of his claim will not fully vindicate his right to a current and proper pretrial probable cause determination." *Id.* at 904.

Respondent agrees that Hawes' claim that the state court failed to hold a preliminary examination at which a probable cause finding could have been made potentially falls within the exception recognized in *Page*. But as those cases make clear, that exception applies *only* when the pursuit of that right will not interfere with the underlying prosecution. Here, unlike the state prisoner in *Page*, Hawes is asking this court to dismiss the state prosecutions with prejudice based on the alleged violation of his pretrial rights. Under *Page*, however, even if Hawes could prove the merits of his claim (which respondent does not concede), he would be entitled only to an order requiring the state court to promptly hold a preliminary hearing to determine probable cause. To the extent he instead seeks dismissal, his claims fall outside of *Page*.

Further complicating Hawes' efforts, any request that this court order the state court to make a probable cause determination is moot. Less than 10 days after Hawes was

27

arrested, the state indicted him on the criminal charges. *See* Exhibit 4. The indictment reflects the grand jury's finding of probable cause to believe that Hawes committed the charged offenses. Thus, Hawes' claim that there was no probable cause finding is moot.

**F.    Unexhausted claims of ineffective assistance do not constitute grounds for avoiding *Younger* abstention**

Hawes also casts his argument in terms of ineffective assistance: he complains that his attorneys did not keep him informed of the case status or scheduled hearings, did not obtain his consent to requests for continuance, and did not insist that Hawes be present for hearings at which the continuance requests were made. *See* Amended Petition (Doc. 10), at 1, 4-5. Hawes asserts that these actions constitute ineffective assistance of counsel. *Id.* at 15. But Hawes' disagreement with his attorney over whether to request continuances can (and should) be raised in a state post-conviction relief action, and the failure to do so should not be used as an excuse to avoid *Younger* abstention. To hold otherwise would turn the exhaustion requirement on its head and would ignore long-standing presumptions concerning the competence of counsel and the right of counsel, not the defendant, to make decisions about trial strategy.

In the state court, Hawes is represented by an attorney from the Alaska Public Defender Agency. One must presume that this attorney is competent and had valid tactical reasons for requesting continuances.[7] *Strickland v. Washington*, 466 U.S. 668, 689 (1984)

---

[7]    The director of the Public Defender Agency, Terrence Haas, was recently quoted as saying that "any lawyer who believes a delay is necessary or would benefit a client's case is 'bound by the ethics of their profession and duty of loyalty to their client to request a continuance.'" Kyle Hopkins, *Anchorage police say they witnessed a sexual assault in*

28

(noting a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Those requests were likely based on the attorney's assessment of what needed to be done in order to adequately defend against the very serious charges that Hawes faces. There is no reason to think, contrary to the strong presumption of competence, that Hawes' attorney was incompetent in this regard. *Id* at 689.

In response, Hawes argues that he should not be put to the "untenable choice of giving up the right to counsel in order to pursue his right to a speedy trial if appointed counsel continues to acquiesce to continuances." Amended Petition (Doc. 10), at 16. But this ignores the simple reality of litigation. Criminal defendants often must make choices that involve the selection of one right over another in the course of litigation. "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow." *McGautha v. California*, 402 U.S. 183, 213 (1971), *overruled on other grounds by Crampton v. Ohio*, 408 U.S. 941 (1972). Thus, the issue is not whether Hawes can be required to choose between constitutional rights, but whether the state can require the specific choice at issue here.

Although Hawes frames the issue as a choice between his right to counsel and his right to a speedy trial, Hawes is in fact demanding both the benefits of counsel and the right to direct counsel's actions as to decisions within the sole control and expertise of the

---

*public. It took seven years for the case to go to trial*, Anchorage Daily News (Jan. 7, 2025), adn.com/alaska-news/crime-courts/2025/01/07/anchorage-police-say-they-witnessed-a-sexual-assault-in-public-it-took-seven-years-for-the-case-to-go-to-trial/. The journalist also quoted an assistant public advocate who, in a 2017 email, wrote: "Time is generally a friend to a defendant . . . Witnesses may get into trouble or their recollections may fade, which could work to your benefit." *Id.*

attorney. There is no middle ground here. Attorneys make numerous tactical decisions relating to trial strategy, many of which may affect a defendant's constitutional rights. It is not the role of the federal court—or of the state court—to mediate disagreements between a defendant and his attorney over tactical decisions relating to trial or pretrial strategy. If a defendant is convicted, he may seek post-conviction relief, asserting a claim of ineffective assistance. Alaska has a robust post-conviction relief process for this very purpose. *See* AS 12.72.010 – 12.72.040; Alaska R. Crim. P. 35.1; *Risher v. State*, 523 P.2d 421 (Alaska 1974); *State v. Jones*, 759 P.2d 558 (Alaska App. 1988). Hawes may not sidestep that process in favor of pretrial intervention by the federal courts.

A contrary rule would insert the federal court into the attorney-client relationship, essentially allowing defendants to litigate in federal court any claim that their attorneys refuse to litigate in the state court. This would prevent state courts from addressing the claims. And it would short circuit the usual process for addressing attorney ineffectiveness, thus forcing the state to litigate the underlying claim in federal court, prior to conviction, even if the defense attorney had valid tactical reasons for not raising it in state court. This result is "untenable" and barred by the *Younger* abstention doctrine.

## G.    Summary

Hawes' underlying premise fails. His rights were not violated when his attorney requested continuances during status hearings at which only the attorneys were present. Likewise, the state court did not violate Hawes' rights when it granted those continuance requests without obtaining Hawes's personal consent. Thus, the facts surrounding these

30

defense-requested delays are not "extraordinary" and do not exempt Hawes from *Younger* abstention. Nor is the trial delay—most of which was at defense request—unusual, unreasonable, or extraordinary. Therefore, Hawes' petition must be dismissed under the *Younger* abstention doctrine.

## II.   HAWES' PETITION MUST BE DISMISSED BECAUSE HAWES FAILED TO EXHAUST STATE REMEDIES

Because Hawes has not yet been convicted, and thus is not imprisoned under a state court judgment of conviction, he filed his federal habeas petition under 28 U.S.C. § 2241. That section allows a prisoner to seek relief if, in relevant part, the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The custody referred to in § 2241 can be the result of any constitutional violation regardless of whether it is pursuant to a final state court judgment. Thus, state prisoners rely on § 2241 when seeking pretrial relief from state detention.

But as a general rule, petitioners must "exhaust available judicial . . . remedies before seeking relief under § 2241." *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). Under this common-law doctrine, absent special circumstances, pretrial federal habeas relief is unavailable "to adjudicate the merits of an affirmative defense to a state criminal charge" until the petitioner has exhausted his remedies in state court. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489 (1973). *See also Holmberg v. Houser*, No. 3:21-cv-00082-RRB, 2021 WL 1725512 at *6 (D. Alaska Apr. 30, 2021) (unpublished) ("Exhaustion is required under common law before bringing a federal petition for a writ of habeas corpus under 28 U.S.C. § 2241.").

Requiring exhaustion in pretrial habeas cases complements *Younger*'s policy of abstention by preventing premature federal intervention in state criminal proceedings and affording state courts the initial opportunity to vindicate federal rights. *Braden*, 410 U.S. at 490-91. Not surprisingly then, this exhaustion requirement has been applied to speedy-trial claims. *Id.* at 491. *See Dickerson v. Louisiana*, 816 F.2d 220, 226 (5th Cir. 1987) (due to failure to exhaust state remedies, pretrial habeas relief was unavailable to petitioner seeking to "adjudicate the merits of his sixth amendment defense"); *Neville v. Cavanagh*, 611 F.2d 673, 676 (7th Cir. 1979) (district court correctly denied habeas petition that sought "to derail a pending state criminal proceeding" on speedy-trial grounds). Similarly, courts accept pretrial challenges to state bail rulings only after the state prisoner has exhausted state remedies. *See*, *e.g.*, *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (allowing federal habeas challenge to state bail order where prisoner had "properly exhausted his state remedies as to his bail hearing"); *Atkins v. People of State of Michigan*, 644 F.2d 543, 549 (6th Cir. 1981) (noting that a state prisoner "must demonstrate that state remedies have been exhausted" before asserting federal challenge to bail); *Reem v. Hennessy*, No. 17-cv-06628-CRB, 2017 WL 6765247 at *2 (N.D. Cal. Nov. 29, 2017) (unpublished) (allowing challenge to bail conditions where prisoner had exhausted his state appeals as to that claim). *See also Notestine v. Houser*, No. 3:21-cv-00072-RRB, 2021 WL 1536569 at *3, 5 (D. Alaska Apr. 19, 2021) (unpublished) (requiring exhaustion of state remedies for both speedy-trial and excessive-bail claims).

The exhaustion requirement "is not onerous." *United States v. Castor*, 937 F.2d 293, 297 (7th Cir. 1991). To satisfy the requirement in the context of a speedy-trial claim,

32

a defendant must present to the state courts a "federal constitutional claim of a *present* denial of a speedy trial." *Braden*, 410 U.S. at 491, *quoted in Castor*, 937 F.2d at 297. A petitioner must "fairly present" his claim in the state courts, including the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Zichko v. Idaho*, 247 F.3d 1015, 1022 (9th Cir. 2001). As the Supreme Court explained in *Braden*,

> It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts.

*Braden*, 410 U.S. at 490-91 (quoting Note, *Developments in the Law – Federal Habeas Corpus*, 83 HARV. L. REV. 1038, 1094 (1970)).

Here, Hawes has not raised any of his current claims in the state courts. He has not filed a speedy-trial motion or a demand for an immediate trial. Nor has he filed a motion to challenge the indictment or pre-indictment proceedings (except for his *pro se* pleadings, which the trial court properly rejected by the court). And he has filed no expedited bail appeal from any of the trial court's rulings on bail. In short, he has failed to exhaust any of his state remedies and has given the state courts no opportunity to address his claims.

Moreover, Hawes still has several avenues by which he may seek relief in the state courts. Most obvious, if he is convicted, Hawes can raise the speedy-trial and indictment issues in a direct appeal of his conviction. *See* Alaska R. App. P. 202(b). If that appeal is unsuccessful, he may file a petition for hearing with the Alaska Supreme Court. *See* Alaska R. App. P. 302. Hawes may also file a post-conviction relief action arguing that his attorney was ineffective in requesting trial continuances or in failing to file a speedy-trial motion or a motion asserting challenges to the indictment and pre-indictment

33

procedures. *See* AS 12.72.020(9); Alaska R. Crim. P. 35.1(a). Likewise, Hawes may request another review of bail conditions if there is new information that has not previously been considered, and, if he disagrees with the result, he may file an expedited bail appeal. *See* AS 12.30.006(d); AS 12.30.030(a); Alaska R. App. P. 206(b), 207.

To date, Hawes has offered no valid excuse for his failure to pursue these state court remedies. At most, he argues that the exhaustion requirement should be excused "where the court-appointed attorney repeatedly either requests or acquiesces to continuances without the knowledge or consent of the defendant, and where the defendant has not waived his speedy trial rights." Amended Petition (Doc. 10), at 13. But as discussed earlier, none of these circumstances constitutes grounds for avoiding *Younger* abstention, and they similarly do not excuse Hawes' failure to exhaust his state remedies.

Hawes also quotes the Ninth Circuit's recognition that "extraordinary delay in the state appellate process may excuse a failure to exhaust state remedies." *Phillips*, 56 F.3d at 1036 (citing *Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir. 1990)). *See* Amended Petition (Doc. 10), at 9 n.26. The defendant in *Coe* argued that the state courts had violated due process as the result of excessive appellate delay. *Coe*, 922 F.2d at 529. The Ninth Circuit agreed, pointing out that "it would be meaningless to insist that petitioner exhaust his state remedies when the essence of his due process claim arises directly out of his inability to do so." *Id.* at 530 (quoting *Wheeler v. Kelly*, 639 F.Supp. 1374, 1378 (E.D.N.Y. 1986), *aff'd*, 811 F.2d 133 (2d Cir. 1989)) (internal quotation marks omitted).

But crucial to this result was the fact that Coe was not seeking dismissal of the state prosecution or reversal of his state conviction. Rather, the court remanded the case

34

"to the district court with instructions for it to enter an order directing the California Court of Appeal to hear his appeal within 90 days or release him." *Coe*, 922 F.2d at 529. In contrast, Hawes seeks dismissal—the very type of relief that the Ninth Circuit has warned against absent the existence of truly extraordinary circumstances. *See also Braden*, 410 U.S. at 488-93 (allowing a pretrial speedy-trial claim where the applicant "comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum" and emphasizing that "nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court").

### III. HAWES' SUBSTANTIVE CLAIMS LACK MERIT

Even if this Court rejects Respondent's procedural arguments, Hawes' claims fail on their merits as well. For this reason, those claims should be denied.

### A. Ground One: Whether the bail imposed by the state court was excessive

In Ground One, Hawes claims that the state court set excessive bail and refused to modify that bail upon later application. *See* Petition (Doc. 1), at 6-7; Amended Petition (Doc. 10), at 2. "The Supreme Court has long recognized constitutional limits on pretrial detention." *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014). Among other things, "restrictions on pretrial release of adult arrestees must be carefully limited to serve a compelling governmental interest." *Id.* (citing *Stack v. Boyle*, 342 U.S. 1, 4-5 (1951), and *United States v. Salerno*, 481 U.S. 739, 746-48 (1987)). Bail is deemed excessive if it is "set at a figure higher than an amount reasonably calculated to fulfill [its] purpose [of

35

assuring the presence of the accused at trial]." *Lopez-Valenzuela*, 770 F.3d at 777 (quoting *Stack*, 342 U.S. at 5) (internal quotation marks omitted). The court may also consider the safety of the victim or others in the community in setting the amount of a defendant's bail. *Id.* at 779 (citing *Salerno*, 481 U.S. at 746-47).

Here, Hawes was charged with multiple counts of sexual abuse of a minor after being accused of sexually penetrating a four-year-old girl who came to his home to play with his son. *See* Exhibit 1. These were extremely serious charges, and the evidence supporting them, including DNA evidence, was particularly strong. If true, the allegations strongly indicated that Hawes was both a danger to the public and a flight risk. For this reason, the trial court initially imposed a substantial bail: $75,000 cash appearance and $100,000 cash performance. *See* Exhibit 3, at 42.

None of Hawes' subsequent requests for modification of this amount altered the trial court's assessment of the risks. As is evident from the state-court proceedings, the trial court was justifiably concerned that Hawes was a risk to the community and posed a significant flight risk. Under these circumstances, the trial court correctly required Hawes to obtain an adequate third-party custodian to provide 24/7 monitoring of Hawes—a requirement that he failed to meet. Hawes has not alleged any facts suggesting that the trial court acted arbitrarily or unreasonably in insisting on an appropriate third-party custodian. Nor has he alleged any facts casting doubt on the state court's refusal to accept the third-party custodian proposed by Hawes—an older, disabled man who did not live in Alaska and had no support network in Alaska other than Hawes himself. *See* Exhibit 3, at 30-33; Exhibit 7 (3/30/22). Nor has he cited any case law that would require a trial court to

36

dispense with the third-party custodian solely because the defendant has been unable to find one. In short, Hawes has failed to allege that the trial court imposed excessive bail in violation of Hawes' constitutional rights under the Eighth Amendment.[8]

## B.   Ground Two: The state's failure to hold a preliminary examination

In Ground Two, Hawes alleges that the state court violated his rights by failing to inform him that he had a right to a preliminary examination and by then failing to hold a preliminary examination. *See* Petition (Doc. 1), at 7. Under Alaska Criminal Rules 5 and 5.1, a defendant who has been charged with a felony is entitled to a preliminary examination at which a judge determines whether there is probable cause to believe that an offense has been committed and that the defendant committed it. *See* Alaska R. Crim. P. 5(e)(2); Alaska R. Crim. P. 5.1(h), (i). If the defendant is in custody (which Hawes was), the preliminary examination must be held within 10 days after the defendant's initial appearance. *See* Alaska R. Crim. P. 5(e)(4)(A).

But this right applies only if the defendant has not yet been indicted. *See* Alaska R. Crim. P. 5(e)(2) (requiring preliminary examination "if the defendant is charged with a felony for which the defendant has not been indicted"). Alaska courts have refused to recognize any constitutional right to a preliminary examination after the defendant has been

---

[8]   Hawes also claims that the state court scheduled multiple bail hearings without his knowledge or consent. *See* Petition (Doc. 1), at 7. This claim is rebutted by the trial court record. According to the log notes and audio of the hearings, Hawes was present with his attorney at all of the bail hearings. *See* Exhibit 3, at 30-33, 35, 37-38; Exhibit 7 (10/27/21, 1/4/22, 3/30/22). Hawes was also present at the arraignment at which bail was set initially. *See* Exhibit 3, at 42.

indicted by a grand jury. *See Martinez v. State*, 423 P.2d 700, 712 (Alaska 1967) ("We are unable to accept appellant's argument that a contemporary reading of state and federal constitutions requires the holding of a preliminary hearing after an indictment has been returned on the same charges.").

Here, Hawes' first appearance was at his arraignment on June 6, 2021. *See* Exhibit 2, at 2 (Events, 6/6/21); Exhibit 3, at 42. The trial court scheduled the preliminary examination for June 16, 2021, within the ten days required by Criminal Rule 5. *See* Exhibit 3, at 42. But Hawes' case was presented to the grand jury on June 11, and that indictment was returned to the trial court on June 14, two days before the preliminary examination. *See* Exhibit 3, at 41; Exhibit 4. As a result, the preliminary examination was cancelled. *See* Exhibit 2, at 3 (Events, 6/16/21). Once indicted, Hawes no longer had a right to a preliminary examination; the purpose of that hearing—i.e., to determine the existence of probable cause—had already been fulfilled by the grand jury. Thus, the state court did not violate state law when it cancelled the preliminary examination. For similar reasons, any failure by the trial court to inform Hawes of his right to a preliminary examination (which respondent does not concede) is moot.

But even if Hawes could show that he was entitled to a preliminary examination under Alaska Criminal Rules 5 and 5.1, the alleged violation of those rules would not constitute a cognizable federal claim. In general, state-law violations do not support federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Moreover, Hawes has cited no cases recognizing a federal constitutional right

to a preliminary hearing in state court to determine probable cause *after* a defendant has been indicted. Therefore, this claim does not meet the most basic requirement for relief under 28 U.S.C. § 2241(c)(3)—i.e., that the petitioner is being held "in violation of the Constitution or laws or treaties of the United States."

C.   **Ground Three: Alleged flaws in the indictment and grand jury proceeding**

In Ground Three, Hawes alleges that the grand jury proceeding and the resulting indictment are flawed. *See* Petition (Doc. 1), at 7. But he has failed to allege any federal constitutional violation in connection with the alleged defects.

First, Hawes claims that the prosecutor presented misleading evidence and failed to present exculpatory evidence to the grand jury. *See* Petition (Doc. 1), at 7. Alaska law imposes a duty on prosecutors to present exculpatory evidence to the grand jury. *See Frink v. State*, 597 P.2d 154, 164-66 (Alaska 1979). But respondent is unaware of any similar federal constitutional requirement; in fact, there is no federal constitutional right to a grand jury indictment in state court. *See Branzburg v. Hayes*, 408 U.S. 665, 668 n.5 (1972) (citing *Hurtado v. California*, 110 U.S. 516 (1884)). Thus, the failure to present exculpatory evidence to a state grand jury, like the failure to provide a grand jury proceeding at all, cannot state a cognizable claim in federal habeas. Likewise, Hawes cites no case law holding that the presentation of allegedly misleading evidence to a state grand jury would violate any federal constitutional right.

Second, Hawes claims that the indictment is "misdated." According to court records, the case was presented to the grand jury and the grand jury signed the indictment

39

on Friday, June 11, 2021. *See* Exhibit 4. The indictment was returned to the court on Monday, June 14, 2021. *See* Exhibit 3, at 41. Hawes was arraigned two days later, on June 16, 2021. *See* Exhibit 3, at 40. It is not clear why Hawes believes that the grand jury proceeding was held on June 29, 2021, or that the indictments "were recorded as being entered June 16, 2021." Petition (Doc. 1), at 7. But even if there was an error in the date listed on the indictment, there is no reason to believe that the alleged error would violate any federal constitutional rights. Defects in a state indictment can be asserted in a federal habeas proceeding only if "the state indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66 68 (5th Cir. 1994). More specifically, a defective indictment may violate a defendant's "fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense." *Gautt v. Lewis*, 489 F.3d 993, 1002 (9th Cir. 2007). There is no reason to believe that, due to the alleged misdating of the indictment, the indictment failed inform Hawes of the nature and cause of the charges against him.

Third, Hawes claims that the indictment proceeding—i.e., the grand jury—and the arraignment were held without his knowledge or presence. *See* Petition (Doc. 1), at 7. But court records show that Hawes was present at his June 16, 2021, arraignment. *See* Exhibit 3, at 40. And he had no right under either the state or the federal constitution to notice of, or to be present at, the grand jury proceeding.

At most, under state law, the prosecutor "must inform the grand jury whenever the accused clearly and unconditionally indicates to the state that he or she desires to testify before the grand jury." *Cameron v. State*, 171 P.3d 1154, 1159 (Alaska 2007). But this duty

is limited. "Once the prosecutor has informed the grand jury of the accused's desire to testify and reminded the grand jury of its ability to call the accused as a witness under Criminal Rule 6(p), the prosecutor's advisory duty under Criminal Rule 6(i) is fulfilled and the decision whether to permit the accused to testify lies solely within the province of the grand jury." *Id.* at 1159. There is no evidence that Hawes made any such request. More important, there is no reason to believe that a violation of this state right would constitute a violation of the federal constitution. Therefore, even if Hawes could establish a violation of the prosecutor's duty to inform the grand jury of Hawes' desire to testify, this would not constitute a cognizable claim in federal habeas.

### D. Ground Four: Hawes' speedy-trial rights

In Ground Four, Hawes alleges that his speedy-trial rights under the Sixth Amendment have been violated by the three-and-a-half-year delay in bringing him to trial. *See* Petition (Doc. 1), at 8; Amended Petition (Doc. 10), at 2, 7-9. Although much of the delay was attributable to requests by his attorney to continue the trial, Hawes claims that (1) he was not present at the hearings at which those requests were made, and he did not waive his right to be present, (2) he did not consent to the requests or otherwise waive his speedy-trial rights; (3) his attorney did not keep him informed of the multiple continuances, and (4) Hawes was not allowed to file *pro se* motions to raise these issues in the state court. *See* Amended Petition (Doc. 10), at 4-5, 14.

Hawes' speedy-trial claim is governed by the four-part balancing test adopted by the Supreme Court for evaluating speedy-trial claims under the federal constitution. *See*

*Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530. The first factor—the length of the delay—is the "mechanism" that triggers the inquiry into the remaining three factors: "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id. See also Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay.").

### 1. *The length of the delay*

Here, the length of the delay—three-and-a-half years—is sufficient to trigger the remaining analysis. *Doggett*, 505 U.S. at 652 n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."). But as discussed below, the remaining factors all weigh heavily against Hawes' claim.

### 2. *The reasons for the delay*

The reasons for the delay strongly favor the state. The delay in this case was primarily due to defense-requested continuances and, to a lesser degree, the unavoidable delays related to the COVID-19 pandemic and the flooding of the Palmer courthouse.

*June 2021 – January 10, 2022*

The first period of delay—from June 2021 to January 10, 2022—was primarily

42

due to COVID-19 restrictions. As explained earlier, when Hawes was initially charged in June 2021, jury trials were suspended due to the pandemic. Although this suspension was lifted in July 2021, COVID case counts began to rise in the late summer of 2021. *See* Exhibit 6. Hospitalizations rose dramatically in July and August 2021, and by October and November 2021, the number of hospitalizations had reached unprecedented levels. *Id.* Thus, jury trials were suspended again on August 4, 2021, and that suspension continued until January 10, 2022, when COVID's Delta surge had eased. *See* Third Judicial District Presiding Judge Orders # 894 (Aug. 4, 2021), # 899 (Aug. 23, 2021), # 901 (Sept. 16, 2021), # 901 First Update (Oct. 12, 2021), # 901 Second Update (Nov. 23, 2021).

This period of COVID delay cannot be counted against the state. As the Ninth Circuit has recognized, jury-trial delays caused by COVID-19 suspension orders do not generally violate speedy-trial requirements. *See United States v. Olsen*, 21 F.4th 1036, 1046-47 (9th Cir. 2022). In reversing a district court's dismissal of a case on speedy-trial grounds due to COVID-related delays, the Ninth Circuit found that COVID-19 was a valid basis for continuing a trial:

> But surely a global pandemic that has claimed more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health. In approving the Central District's declaration of judicial emergency, this Court's Judicial Council explained that "Congress did not intend that a district court demonstrate its inability to comply with the [Speedy Trial Act] by dismissing criminal cases and releasing would-be convicted criminals into society." *See Judicial Emergency*, 955 F.3d at 1142-43. That is precisely what the district court did here.

*Id.* at 1047. The Ninth Circuit thus concluded that the suspension of jury trials was

43

appropriate and did not violate the defendant's speedy-trial right:

> The Central District of California did not cast aside the Sixth Amendment when it entered its emergency orders suspending jury trials based on unprecedented public health and safety concerns. To the contrary, the orders make clear that the decision to pause jury trials and exclude time under the Speedy Trial Act was not made lightly. The orders acknowledge the importance of the right to a speedy and public trial both to criminal defendants and the broader public, and conclude that, considering the continued public health and safety issues posed by COVID-19, proceeding with such trials would risk the health and safety of those involved, including prospective jurors, defendants, attorneys, and court personnel.

*Id.* at 1049.

Like the Ninth Circuit, courts elsewhere have refused to attribute COVID delay to the government or, if they do attribute the delay to the government, they have given no weight to such delay. *See*, *e.g.*, *Elias v. Superior Court of San Diego Cnty.*, 294 Cal.Rptr.3d 178, 190-91 (Cal. Ct. App. 2022); *Labbee v. State*, 869 S.E.2d 520, 566-67 & n.5 (Ga. Ct. App. 2022); *People v. Johnson*, 218 N.E.3d 394, 411 (Ill. App. Ct. 2023); *State v. Paige*, 977 N.W.2d 829, 838 (Minn. 2022); *State v. Jackson*, 968 N.W.2d 55, 61 (Minn. Ct. App. 2021); *State v. Oliver*, 655 S.W.3d 407, 417 (Mo. Ct. App. 2022); *State v. Hesse*, 519 P.3d 462, 467 (Mont. 2022); *State v. Moody*, 970 N.W.2d 770, 779 (Neb. 2022); *State v. Peters*, 981 N.W.2d 874, 879 (N.D. 2022); *Cornelius v. State*, 534 P.3d 715, 720 (Okla. Crim. App. 2023); *State v. Tuinman*, 535 P.3d 362, 380 (Utah Ct. App. 2023); *State v. Labrecque*, 307 A.3d 878, 887-88 (Vt. 2023); *State v. Boyer*, 308 A.3d 408, 419-20 (Vt. 2023); *Ali v. Commonwealth*, 872 S.E.2d 662, 675-76 (Va. Ct. App. 2022); *State ex rel. Porter v. Farrell*, 858 S.E.2d 897, 907 n.15 (W.Va. 2021); *Cotney v. State*, 503 P.3d 58, 67 (Wyo. 2022). As one federal court noted, "[i]n the case of the COVID-19 pandemic, the

44

Government does not bear the ultimate responsibility for the pandemic; the pandemic is outside of the control of either the parties or the courts." *United States v. Pair*, 522 F.Supp.3d 185, 194 (E.D. Va. 2021).

*January 10, 2022 – March 14, 2022*

The second period of delay ran from January 10, 2022, when the COVID-related suspension was lifted, until March 14, 2022. During this period, jury trials were suspended because the Palmer courthouse flooded "as a result of the recent extraordinary weather event." *See* Third Judicial District Presiding Judge Order # 918 (Jan. 4, 2022), # 918 Updated (Feb. 14, 2022). However, on March 14, 2022, the presiding judge ordered that some Palmer jury trials would go forward but would be held in the Anchorage courthouse, to the extent space was available there. *See* Third Judicial District Presiding Judge Order # 923 (Mar. 14, 2022). Surely, this brief delay due to the disruptions caused by courthouse flooding during an extreme weather event is not unreasonable.

*April 2022 – present*

Since April 2022, Hawes has not requested a trial in Anchorage or anywhere else. Instead, from April 2022 through the present, Hawes' attorney has requested a series of continuances. *See* Exhibit 3, at 1-29; Exhibit 7 (4/15/22, 6/10/22, 7/15/22, 8/11/22, 9/23/22, 10/21/22, 12/2/22, 1/4/23, 2/8/23, 4/19/23). Because this delay is directly attributable to Hawes, this time weighs heavily against Hawes.

In response, Hawes claims that the delay attributable to his attorney's requests for continuances should not be charged against him because he did not consent to those requests, he was not present at the hearings at which they were made, and he did not waive

45

his right to be present at those hearings. *See* Amended Petition (Doc. 10), at 14-15. However, as explained earlier, there is no constitutional requirement that a defendant consent to his attorney's request for a continuance and no constitutional right to be present at status hearings at which only administrative matters, such as scheduling, are discussed. Moreover, any claim that a defense attorney was ineffective in this regard must first be alleged in a post-conviction relief action filed in state court. Thus, none of Hawes' excuses allow these defense-requested delays to be weighed against the state.

Hawes also ignores the fact that the defense-requested continuances were likely needed in order to prepare an effective defense. The more serious the crime, the more delay may be tolerated. *Barker*, 407 U.S. at 531 ("To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). Hawes faces extremely serious charges: (1) two counts of first-degree sexual abuse of a minor, each an unclassified felony with a maximum term of 99 years and a presumptive range for a first felony offender of 25 to 35 years; (2) one count of attempted first-degree sexual abuse of a minor, a class A felony with a maximum term of 99 years and a presumptive range for a first felony offender of 20 to 30 years; and (3) one count of second-degree sexual abuse of a minor, a class B felony with a maximum term of 99 years and a presumptive range for a first felony offender of 5 to 15 years. *See* AS 11.41.434(b); AS 11.41.436(b); AS 11.41.450(b); AS 12.55.125(i)(1), (3), (4). Moreover, given the strength of the evidence against Hawes (including Hawes' DNA being found on his four-year-old victim's underwear), competent counsel could decide that delay—and the possible loss of evidence it might engender—would work in Hawes' favor.

46

### 3. Assertion of the speedy-trial right

Hawes asserted his speedy-trial right in two *pro se* motions filed in August 2024, each of which demanded the dismissal of the case based on an alleged speedy-trial violation. *See* Exhibits 12, 13. Hawes also mentioned his speedy-trial right in a *pro se* request for a representation hearing filed in September 2024. *See* Exhibit 14. But, as noted earlier, these pleadings were properly rejected because Hawes was represented by counsel. More important, even if those pleadings had been accepted, Hawes did not demand an immediate trial. It is clear from these pleadings that Hawes does not want an immediate trial; he seeks only to avoid a trial through dismissal based on a speedy-trial claim asserted after more than two years of defense-requested continuances.

As the Montana Supreme Court noted, the assertion of the speedy-trial right must be viewed in context: "Courts must analyze a defendant's response to delay 'based on the surrounding circumstances—such as the timeliness, persistence, and sincerity of the objections, [and] the reasons for [any] acquiescence.'" *State v. Kirn*, 530 P.3d 1, 12-13 (Mont. 2023) (quoting *State v. Ariegwe*, 167 P.3d 815, 848 (Mont. 2007)). Although the defendant in that case had asserted his right to speedy trial, he had also delayed the trial by firing his attorney. *Id.* at 13. The Montana court thus weighed this factor against the defendant. *Id.* This court should do the same in the Hawes' case.

### 4. Prejudice

Finally, the only allegation of prejudice that can be gleaned from Hawes' petition is his assertion of his allegedly unconstitutional confinement. *See* Petition (Doc. 1);

Amended Petition (Doc. 10). This does not qualify as prejudice under the *Barker* analysis. The effect of incarceration on a defendant's personal life, including the mental and emotional stress that such incarceration may generate, is shared by any defendant who is unable to meet bail requirements. If incarceration alone were sufficient to prove actual prejudice, then all trial delays—including delays of less than one year—would result in dismissal as long as the defendant remained incarcerated. This would create the odd result that charges against a person who was incarcerated pending trial could be dismissed after even short trial delays, while a person who met the bail requirements and was released pending trial would remain criminally liable for his actions. Although the speedy-trial protection is designed to reduce the pretrial impact on a defendant, it was not intended to create such a windfall.

### 5. *Summary*

The bulk of the delay in Hawes' state case is attributable to Hawes himself or to necessary delay associated with COVID-19 and a courthouse flood. Moreover, the state has charged Hawes with extremely serious offenses, making delays attributable to the defense or the state reasonable. And Hawes has not alleged any valid claim of prejudice as a result of the delays. Under these circumstances, he cannot establish a speedy-trial violation and is not entitled to the dismissal of the charges pursuant to § 2241.

### E. Hawes' state-court attorneys have not been ineffective in failing to raise the issues discussed in Grounds One through Four

Although not listed as a separate ground for relief, Hawes claims that his attorney in the state court has provided ineffective assistance in failing to raise the constitutional

48

claims that Hawes is now raising in federal court. *See* Amended Petition (Doc. 10), at 15. Criminal defendants have a constitutional right to counsel, which includes "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. A defendant alleging ineffective assistance must prove (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced him. *Id.* at 687. Neither is an easy burden to meet.

With respect to counsel's performance, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, the court's review is "highly deferential":

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The prejudice prong sets a similarly high standard. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, the defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id.* at 694.

Here, Hawes' ineffective-assistance claims fail for at least three reasons. First, Hawes has alleged no facts from which a court could conclude that his attorney was incompetent in requesting continuances and in not obtaining Hawes' consent to those continuances. Nor is there any reason to believe that Hawes' attorney was incompetent in failing to raise in the state courts any of the claims Hawes now seeks to raise in this court. None of those claims have any substantive merit. Therefore, Hawes cannot prove that his attorney was incompetent in not raising those issues or that Hawes was prejudiced by their omission. Second, because the state action is still pending, it is impossible to judge what effect, if any, the defense attorney's actions may have on the outcome of the litigation. Whether these acts affect the outcome of the case will depend largely on how the case is litigated at trial. It is premature to make that determination now.

## Conclusion

Hawes has made no attempt to properly raise his constitutional issues in the state courts, despite the availability of such remedies in Alaska's trial and appellate courts. Moreover, he is asking this Court to intervene and dismiss the pending state prosecution— a remedy that is barred under the *Younger* abstention doctrine. For these procedural reasons, this Court should deny Hawes' petition for pretrial relief. But even if this Court reaches the merits of Hawes' claims, those claims lack merit and should be denied.

DATED this 27th day of January, 2025.

TREG TAYLOR
ATTORNEY GENERAL

<u>s/ Diane L. Wendlandt</u>
Diane L. Wendlandt (9011121)
Assistant Attorney General
Office of Criminal Appeals
310 K Street, Suite 702
Anchorage, AK 99501
Telephone: (907) 269-6260
Email: diane.wendlandt@alaska.gov

## Certificate of Service

I certify that on January 27, 2025, a copy of the foregoing Answer to Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 was served electronically on Jane B. Martinez.

## <u>s/ **Diane L. Wendlandt**</u>